STATE of Missouri, Respondent,

v.

Ledale NATHAN, Appellant.

No. 74085.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 18, 1999.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL J. SIMON, Presiding Judge.

Ledale Nathan (defendant) appeals the judgment entered on the jury's verdict finding him guilty of distribution or delivery of a controlled substance, pursuant to section 195.211 RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise noted). Pursuant to section 195.275, he was sentenced as a persistent drug offender to a term of twenty years' imprisonment.

On appeal, defendant presents two points, one of which contains subpoints that are somewhat confusingly organized, the other of which contains four rather long, verbose full sentences. Although the State has not questioned defendant's compliance with Rule 30.06, we consider whether he has constructed his points relied on in compliance with Rule 30.06(d), which specifies the requirements that all parties must follow when drafting their points relied on. In pertinent part, Rule 30.06(d) provides as follows:

> The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous with citations of authorities thereunder.... Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule.

A comparison of the form specified in Rule 30.06(d) with the form used by defendant in his brief reveals that he has neither briefly nor concisely constructed his points relied on. Nevertheless, as we stated in *Brancato v. Wholesale Tool Co., Inc.*, 950 S.W.2d 551, 554 (Mo.App. E.D. 1997), we may rule on the merits of the appeal when the issues in question are clear and can be found somewhere else in the brief. Therefore, we proceed to consider defendant's points by restating them in a more organized fashion which more closely follows the form required by our Supreme Court.

On appeal, defendant contends that the trial court (1) "plainly and clearly erred" in (A) finding him, during trial, to be a prior drug offender under section 195.285; (B) allowing the State, after his jury trial, to (i) file an information charging him as a persistent drug offender; and (ii) prove him to be a persistent drug offender; (C) sentencing him as a persistent drug offender under section 195.295, and (D) sentencing him to twenty years' imprisonment because doing so violated his right to due process of law under Rule 23.08, sections 195.275, 195.291, 545.300, and 558.021, Article I, section 10 of the Missouri Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution in that (a) section 195.285 applies only to defendants convicted of possession of a controlled substance, not distribution or delivery thereof; (b) the State did not charge him to be or prove him to be a persistent drug offender until after his jury trial; (c) section 195.295 applies only to defendants convicted of second degree drug trafficking; and (d) the trial court earlier had ruled that it would sentence him pursuant to section 558.011.1(2), which provides for a sentence of only five to fifteen years' imprisonment.

Additionally, defendant argues that the trial court (2) "clearly erred" in allowing the State to exercise a peremptory strike against Beckie White and rejecting his *Batson* challenge because the State exercised its strike on account of White's race, in violation of defendant's and White's right to equal protection under the law pursuant to Article I, section 2 of the Missouri Constitution and the Fourteenth Amendment to the United States Constitution, and the State's only proffered response to defendant's *Batson* challenge was inadequate in that, under Missouri law, the State's assertion that it had not struck other venirepersons of White's race does not constitute a reasonably specific, clear, and race-neutral explanation for its striking of White. We remand with directions.

Defendant does not contest the sufficiency of the evidence; therefore, our recital of the facts will focus on the procedural facts relating to defendant's two points on appeal. Viewed in a light most favorable to the verdict, the record reveals that during the late afternoon of January 8, 1997, Detective Martise Scott, a member of the Street Corner Apprehension Team (SCAT), was working undercover in Wellston, a city in St. Louis County, Missouri. SCAT had received complaints that drug trafficking was occurring in that area and decided to "attack" the area by attempting to "pick out" individuals who were selling drugs at various locations there. Scott found a "steerer" named James Horskins standing approximately three blocks from 6450 Etzel. A steerer can lead a person to a location where drugs are being sold. Horskins entered Scott's car, claimed he could take Scott to a person who had drugs, and told Scott to drive to 6450 Etzel. Detective Craig Jeffery, listening to Scott by way of hidden microphone, followed in a van. After Scott gave Horskins forty dollars to buy some crack cocaine, Horskins exited the car, approached defendant, and began to talk to him. Scott saw Horskins give defendant the forty dollars and saw defendant hand Horskins a substance appearing to be crack cocaine. Horskins then reentered the car, gave Scott the crack cocaine, and asked to be returned to his original location. Scott drove away and when clear of the scene placed Horskins under arrest. He then returned to the area of the transaction and assisted other officers in apprehending defendant.

Defendant was indicted for sale of a controlled substance near a school, punishable upon conviction under section 558.011.1(1), which mandates a penalty of ten to thirty years' imprisonment or life imprisonment. The indictment specifically referred to section 558.011.1(1) as the applicable statute. Although the indictment specified section 195.218 as the statute defining the crime of sale of a controlled substance near a school, that statute actually describes the crime of distribution of a controlled substance near public housing. Section 195.214 covers the crime of distribution of a controlled substance near a school. Nevertheless, the authorized penalty for both crimes is the same; moreover, the trial court later instructed the jury on the crime of distribution or delivery of a controlled substance, a violation of section 195.211, which is a statute mentioned in sections 195.218 and 195.214.

Later, defendant filed a Motion to Continue Trial Setting in which he stated his "understanding and belief" that he would "be pleaded up by the State as a prior and persistent drug offender." Additionally, he acknowledged that "[a]s a prior and persistent drug offender, [he] face[d] a sentence without the possibility of probation or parole, if convicted." Finally, recognizing the "potential sentence involved if a conviction [would be] obtained on this cause," he stated that he believed that completing his trial preparation was "of the utmost importance."

On the first day of trial, defendant's attorney filed a motion in limine in which he stated, "It is the understanding of undersigned counsel that defendant has prior convictions on criminal charges." Defendant moved to preclude the State from presenting evidence regarding such prior convictions or to limit the State's use of such evidence. The trial court denied his motion.

At the end of *voir dire*, the trial judge, the prosecutor, and defendant's attorney began a discussion in chambers concerning the State's use of a peremptory strike against venireperson White. In its entirety, that discussion follows:

> THE COURT: Let the record show that with respect to [*Batson*] that I feel that jurors 2, 8, 9, 22, and 23 are black African American. Also number 15, who was excused because of a doctor's appointment, was black. Let the record show that the State has I think only stricken one black, which is Beckie

White number 22; is that correct, [defense counsel]?

[Defense counsel]: Yes, my record indicates the same.

THE COURT: Do you desire any record then with respect to [*Batson*]?

[Defense counsel]: I would strictly, just with respect to juror number 22, Beckie White, my notes do not reflect any responses she made. I would note there are at least two other jurors that my notes also reflect there were no responses given to any questions. I have no reason why she was stricken other than that's the basis of my [*Batson*] motion basically.

THE COURT: What's the current status of the law[?] It would occur to the Court there is no evidence here of lack of racial neutrality, but on the other hand, it is now with respect to one juror, regardless of the number—

[Prosecutor]: Your Honor, it is my understanding of the law that the defense has the burden to show the strikes were racially motivated. At that point, the burden then shifts to the State to show that those strikes were not racially motivated. That's the State's understanding of the law. At this point, I would contend number one, the defense has not made a showing that the strike was racially motivated; and in that, the State did not strike juror number 2, Ms. Christine Reese, who is African American. Did not strike number 8, Wendolyn Darden, African American, nor juror number 9, Maura McCollum, who is African American. Mr. Robinson is an African American, but was stricken for cause. The Court has already made a record on juror number 22, who is an African American, as is juror number 23.

THE COURT: I am going to find the strike is not racially motivated.

[Defense counsel]: Can I clarify the record[?]

THE COURT: Yes.

[Defense counsel]: Basically my strike is [sic] on Ms. White is that in [sic] my notes indicates [sic] although she did not make any responses to any questions indicating any kind of potential bias or prejudices one way or another, whether or not it would be sufficient for a cause—strike that—there was another juror, juror number 11, Tiffany Boyle, my records show is white or Caucasian that also made no responses. That reflects in my notes to any one question indicating any biases or prejudices; therefore, by virtue of the fact one was white, one was black, that's the basis of my objection.

THE COURT: Let the record show that I find the strike is not racially motivated; therefore, the prosecutor does not have to go further.

The record reveals that Boyle and White in fact responded "No" to a question which the prosecutor posed near the end of his examination to determine whether any venirepersons believed that they could not be fair and impartial.

During trial, the State presented the testimony of Scott and Jeffery and submitted a few exhibits. At the close of the State's evidence, defendant filed a motion for judgment of acquittal, which was denied.

In chambers on the morning of the following day, the State presented the following matter to the trial court's attention:

[Prosecutor]: [Y]our Honor, pursuant to our pleading on priors alleging that the defendant is a prior drug offender, we would ask that the Court take judicial notice of an authenticated copy and sealed copy by Evelyn Cox of the 21 st Judicial Circuit, in that on or about August 9, 1991, the defendant pleaded guilty to the felony of Possession of a Controlled Substance, in the Circuit Court of the County of St. Louis, State of Missouri. And said felony was committed on May 17, 1990. We would ask that the Court find beyond a reasonable doubt that the defendant is a prior drug

offender as defined in Section 195.275.1(1) RSMo. We would ask the Court to assess punishment as provided in Section 195.285.1, and 558.011.1(2) RSMo.

THE COURT: The Court takes judicial notice of its own record and receives in evidence State's motion Exhibit 1, which is the minutes of the proceeding and the certified copy of the judgment in the former case.

* * *

The trial court then entered findings of fact wherein it stated, "[T]he Court finds beyond a reasonable doubt that the defendant is a prior drug offender as defined in Section 195.275.1(1), RSMo. The Court will assess punishment as provided in Section 195.285.1 and Section 558.011.1(2), RSMo." The record reveals that the State's pleading, the indictment, in fact did not contain an allegation that defendant is a prior drug offender. Furthermore, section 195.285 refers to prior drug offenders convicted of a violation of section 195.202.2, a statute defining the crime of possession or control of a controlled substance. Section 195.291 is the statute covering prior drug offenders convicted of distribution or delivery of a controlled substance, which is the crime defined in section 195.211, the statute mentioned in sections 195.218 and 195.214. Moreover, the applicable sentencing statute for a prior drug offender convicted of distribution or delivery of a controlled substance is section 558.011.1(1), the same sentencing statute cited in the State's indictment.

After the trial court entered its findings of fact, defendant presented his own testimony. On cross-examination, defendant acknowledged that (1) on August 9, 1991, he pled guilty to possession of a controlled substance; (2) on November 17, 1994, he pled guilty to attempting to possess a controlled substance; and (3) on November 5, 1996, he pled guilty to possession of a controlled substance. At the close of all the evidence, defendant filed another motion for judgment of acquittal which was denied.

The trial court instructed the jury on the crime of distribution or delivery of a controlled substance, a violation of section 195.211. The verdict director did not instruct the jury to assess and declare the punishment which defendant would receive if convicted. The jury returned a verdict of guilty.

Defendant filed a motion for new trial in which he argued that the trial court erred in overruling his objection to the peremptory challenge used by the State against White. The motion was denied.

Later, the State filed an information in lieu of indictment in which it charged defendant with delivering a controlled substance, a violation of section 195.211, and being a persistent drug offender, pursuant to section 195.275. Citing defendant's prior convictions of possession of a controlled substance on August 9, 1991 and November 5, 1996, the information stated that defendant was punishable under section 195.295 in that he had pled guilty to two or more felonies in the State relating to controlled substances. Section 195.295 refers to prior drug offenders convicted of a violation of section 195.223, a statute defining the crime of second degree drug trafficking. Section 195.291 is the statute covering prior drug offenders convicted of distribution or delivery of a controlled substance.

At the sentencing hearing, the following discussion regarding defendant's prior convictions arose:

THE COURT: ... Did we prove up the priors at the trial?

[Prosecutor]: Your Honor, prior to the submission to the jury, he was proved up to be a prior drug offender, and the State at this time would like to have the opportunity to prove him up as a prior and persistent drug offender at this time.

THE COURT: You may.

[Prosecutor]: We're going to mark this as State's [M]otion Exhibit No. 2, which is a certified and authenticated copy from the 22 nd Judicial Circuit of St. Louis City wherein the defendant was guilty or—I'm sorry—he pled guilty to the felony of possession of a controlled substance, and that judgment was entered accordingly, and I'd ask that the Court take judicial notice of that. Furthermore, I would ask that the Court enter a finding that the defendant, pursuant to the applicable statutes, is a prior and persistent drug offender according to the revised statutes of the State of Missouri.

THE COURT: [Defense counsel], have you had a chance to go over State's Motion Exhibit 2[?]

[Defense counsel]: Yes, [Y]our Honor, and I've also reviewed State's Exhibit 1, which I believe is the other prior.

[Prosecutor]: Yes, I'm handing that to [defense counsel] now.

[Defense counsel]: And it's my understanding under the laws of Missouri that I do not have a legal objection based on the laws of Missouri to either of those.

THE COURT: All right. Let the record show that I am then filing findings of fact pursuant to section 195.275.1(2), that defendant is a persistent drug offender. I will give each of you a copy of that finding.

\* \* \*

The trial court then entered findings of fact wherein it stated, "[T]he Court finds beyond a reasonable doubt that the defendant is a prior drug offender as defined in Section 195.275.1(1) and also is a persistent drug offender as defined in Section 195.275.1(2), RSMo. The Court will assess punishment as provided in Section 195.295.2 and Section 558.011.1(1), RSMo." As we noted previously, section 195.295 refers to prior drug offenders convicted of a violation of section 195.223, a statute defining the crime of second degree drug trafficking. Section 195.291 is the statute covering prior drug offenders convicted of distribution or delivery of a controlled substance. After the trial court entered its findings of fact, it sentenced defendant to a term of twenty years' imprisonment.

In his first point on appeal, defendant maintains that the trial court "plainly and clearly erred" in (A) finding him, during trial, to be a prior drug offender under section 195.285; (B) allowing the State, after his jury trial, to (i) file an information charging him as a persistent drug offender; and (ii) prove him to be a persistent drug offender; (C) sentencing him as a persistent drug offender under section 195.295, and (D) sentencing him to twenty years' imprisonment because doing so violated his right to due process of law under Rule 23.08, sections 195.275, 195.291, 545.300, and 558.021, Article I, section 10 of the Missouri Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution in that (a) section 195.285 applies only to defendants convicted of possession of a controlled substance, not distribution or delivery thereof; (b) the State did not charge him to be or prove him to be a persistent drug offender until after his jury trial; (c) section 195.295 applies only to defendants convicted of second degree drug trafficking; and (d) the trial court earlier had ruled that it would sentence him pursuant to section 558.011.1(2), which provides for a sentence of only five to fifteen years' imprisonment.

The record indicates that defendant never presented any of the issues contained in point one to the trial court. Defendant recognizes this fact but seeks plain error review under Rule 30.20, which requires a showing that manifest injustice or miscarriage of justice has resulted from an error affecting substantial rights. The State concedes that it may be error to allow the State to prove a defendant's status as a prior or persistent offender after the case has been submitted to the jury, but argues that, under Missouri case law, reversal is not required; rather, remand is the proper remedy because it is difficult to see how

defendant suffered any actual prejudice. Defendant, however, seeks a reversal and remand with directions to strike the finding that defendant is a persistent drug offender and to re-sentence him as a class B felon.

In light of our decision to remand for an evidentiary hearing on the issue raised in point two, we find it inappropriate to issue a holding concerning any part of point one because the trial court, after holding the evidentiary hearing we order, may grant defendant relief on the issue raised in point two and thereby render anything we say about point one moot. Therefore, we proceed to point two.

■ In his second point on appeal, defendant contends that the trial court "clearly erred" in allowing the State to exercise a peremptory strike against Beckie White and rejecting his *Batson* challenge because the State exercised its strike on account of White's race, in violation of defendant's and White's right to equal protection under the law pursuant to Article I, section 2 of the Missouri Constitution and the Fourteenth Amendment to the United States Constitution, and the State's only proffered response to defendant's *Batson* challenge was inadequate in that, under Missouri law, the State's assertion that it had not struck other venirepersons of White's race does not constitute a reasonably specific, clear, and race-neutral explanation for its striking of White.

The record indicates that defendant timely presented his *Batson* challenge to the trial court and preserved his claim of error in his motion for new trial. The State concedes that the prosecutor and the trial court failed to follow the procedure required by Missouri law and argues that the proper remedy is a remand for an evidentiary hearing concerning defendant's *Batson* challenge. Defendant, however, seeks a reversal and remand for a new trial.

■ When confronted with a defendant's timely *Batson* objection, a three-step procedure must be followed. *State v. Parker*, 836 S.W.2d 930, 939 (Mo.banc 1992); *cf. Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Our Supreme Court has declared that Missouri's unitary procedure for the vindication of *Batson* claims is superior to the bifurcated procedure suggested by *Batson* itself in that Missouri's procedure better protects the equal protection rights of defendants and venirepersons and facilitates the efficient administration of justice in this State. *Parker*, 836 S.W.2d at 940. A failure to follow this procedure constitutes clear error and requires the appellate court to remand to the trial court for an evidentiary hearing at which the trial court must follow the three steps outlined in *Parker*, then certify to the remanding court a record of the trial court's proceeding and finding. *State v. Dunn*, 889 S.W.2d 65, 69–70 (Mo.App. E.D.1994).

■ Under Missouri's unitary procedure, first, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the State and identify the cognizable racial group to which the venireperson or persons belong. The trial court then will require the State to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant then will need to show that the State's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. *Id.* at 939. With respect to the second step, the former practice of placing decisive reliance upon the presence of other members of the struck venireperson's race on defendant's jury or the State's failure to use all of its strikes to remove other members of the struck venireperson's race to undercut any inference of discrimination by the State is no longer valid. The removal of even one person from the venire for racial reasons constitutes a violation of the equal protection clause, regardless of the racial composition of the selected jury. *Id.* at 940.

■ Here, defendant timely raised his *Batson* challenge by objecting to the striking of venireperson White, a black woman, from the venire. The trial judge then inquired, "What's the current status of the law[?]" The prosecutor claimed that the defense had the burden to show that the State's strikes were racially motivated, argued that the defense had failed to do so, and noted that the State had not struck several other black venirepersons from the venire. The trial court then declared, "I am going to find the strike is not racially motivated." Clearly, the trial court failed to follow the three-step procedure outlined in *Parker* and accepted an invalid reason from the State for the striking of White. Defendant's point is meritorious; nonetheless, a reversal and remand for a new trial is not necessary. Instead, the failure to follow the procedure specified in *Parker* requires a remand for an evidentiary hearing at which the trial court must follow the proper procedure, then certify a record of its proceeding and finding to us. *Dunn,* 889 S.W.2d at 69–70.

Remanded for an evidentiary hearing consistent with this opinion.

KATHIANNE KNAUP CRANE, J. and LAWRENCE E. MOONEY, J., concur.